**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JEFFREY HOFFMAN, | |
| Appellant | No. 1779 WDA 2015 |

Appeal from the PCRA Order Entered October 8, 2015
In the Court of Common Pleas of Cambria County
Criminal Division at No(s):
CP-11-CR-0000254-1996
CP-11-CR-0000255-1996
CP-11-CR-0000256-1996
CP-11-CR-0000257-1996
CP-11-CR-0000258-1996

BEFORE:  BENDER, P.J.E., OTT, J., and FITZGERALD, J.[*]

MEMORANDUM BY BENDER, P.J.E.:          **FILED DECEMBER 02, 2016**

Appellant, Jeffrey Hoffman, appeals from the post-conviction court's October 8, 2015 order denying his petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541-9546.  After careful review, we affirm.

We have reviewed the certified record, the briefs of the parties, and the applicable law.  Additionally, we have reviewed the October 8, 2015 opinion of the Honorable Timothy P. Creany, President Judge of the Court of Common Pleas of Cambria County.  We conclude that Judge Creany's well-

_____

[*] Former Justice specially assigned to the Superior Court.

reasoned opinion, which accompanies his order denying Appellant's PCRA petition, accurately disposes of the issue presented by Appellant. Accordingly, we adopt that opinion as our own, and affirm the order denying Appellant's PCRA petition on the basis set forth therein.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/2/2016

IN THE COURT OF COMMON PLEAS OF CAMBRIA COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA : Nos. 254-1996, 256-1996, 258-1996,
: 255-1996, 257-1996

vs. :
:
JEFFREY HOFFMAN, : PCRA
Defendant :

## OPINION

The defendant was charged with the rape and assault of four elderly women from Moxham, Westmont and Upper Yoder Township over a period of four years from 1991 to 1995. A jury found the defendant guilty following an eight-day consolidated trial on Nov. 20, 1996, of rape, criminal attempt to commit rape, involuntary deviate sexual intercourse, criminal attempt to commit involuntary deviate sexual intercourse, aggravated assault, robbery, burglary, criminal trespass, unlawful restraint, terroristic threats, theft by unlawful taking and receiving stolen property. He was sentenced to serve 95 to 190 years in state prison by then-Judge Thomas A. Swope, Jr., in January 1997.

On March 11, 2015, the defendant filed a second or subsequent petition for Post Conviction Relief, seeking a new trial. The basis of the PCRA petition is a letter, dated December 22, 2014, from Special Counsel for the United States Department of Justice, relative to a systematic review by the Department of Justice of hair comparison reports and testimony presented by employees of the FBI Laboratory before December 31, 1999. This review found that, in some cases, the FBI Lab examiner overreached acceptable scientific limits by overstating conclusions which could appropriately be drawn from submitted and examined hair samples.

The petition was timely filed within the meaning of 42 Pa.C.S.A. § 9545(b)(1)(ii) and (b)(2), the defendant having filed it within sixty (60) days of learning of the Department of

Justice letter, which was forwarded to him by trial counsel, Patricia Moore, Esq., on January 16, 2015. As the Commonwealth stipulated, an exception to the PCRA Act's time bar requirements have been met since the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence.

At the 1996 trial, FBI examiner Special Agent Christopher Hopkins testified regarding one of the defendant's victims, Mrs. Stutzman, stating that hairs found in the defendant's debris in his vehicle and his home, were similar to the victim's hair. He further testified that similarities in nylon carpet and polyester clothing fibers linked the defendant to the victim.

After-discovered evidence is a basis for a new trial only if it: (1) has been discovered after the trial and could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely for impeachment purposes; and (4) is of such a nature and character that a different verdict will likely result if a new trial is granted. Com. v. Valderrama, 479 Pa. 500, 388 A.2d 1042 (1978).

The parties agree that the first three prongs of the after-discovered evidence test are satisfied and only the fourth prong is at issue.

Video-conference PCRA hearing was conducted with the defendant's consent on September 23, 2015. Defendant's counsel, Devon Casti, Esq., argued that due to the FBI's erroneous conclusions, the exclusion of Agent Hopkins testimony at trial would have likely compelled a different verdict under 42 Pa.C.S. §9543(a)(2).[1] She pointed out that DNA evidence was presented in all of the victim's cases but for Mrs. Stutzman's case.

---

[1] (a) General rule.--To be eligible for relief [...] the petitioner must plead and prove by a preponderance of the evidence [...](2) That the conviction or sentence resulted from one or more of the following: (vi) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced. 42 Pa.C.S. §9543(a)(2)(vi).

2

Trial defense co-counsel, Michael Filia, Esq., testified that he cross-examined Agent Hopkins in Mrs. Stuzman's case, and believed he raised reasonable doubt regarding the expert's testimony which attempted to match the victim's hair and fiber samples to the defendant. He and co-counsel Patricia Moore, Esq., raised objections, arguing that evidence of the scientific accuracy of such a "match" was not permitted. The Court allowed the agent to use the term "consistent." The same ruling was applied to defendant counsel's objection relating to brown Caucasian male hairs, wherein the Court did not permit the agent to testify beyond the phrase "consistent with" a specific individual's hair. Mr. Filia testified to his strategy on cross:

> "Just trying to make sure we object or get the – or have the examiner testify that he could not match the evidence – the hair samples to Mr. Hoffman, that although there may be similarities, that he could not match it to him." (N.T., PCRA Hearing, 9/23/2015, p. 20).

Regarding the agent's testimony about nylon carpet fibers that were found at Mr. Hoffman's apartment (having refreshed his memory from the transcript), Mr. Filia stated:

> "I proceeded to cross examine him that wouldn't it appear that these types of fibers would be common in many types of carpets, and I think he admitted to that." (Id., p. 25).

Regarding fibers taken from the bedspread and the socks of the victim, Mr. Filia stated that once again "the expert did not say they were a match, just consistent in nature, but he could not say they were a match." (Id., p. 27).

Mrs. Stutzman's mouth was stuffed with a knotted gag, wrapped in tape. The tape revealed two latent fingerprints. A separate fingerprint expert testified that the fingerprints belonged to the defendant, and Mr. Filia recalled that he attempted on cross-examination to show the analysis was unreliable.

Co-counsel Patricia Moore testified at the PCRA hearing that she and Mr. Filia vigorously and strenuously objected to the term "match," and believed they managed to attack

even the term "consistent." (Id., pg. 43). Attorney Filia was able to bring out that gray hair has limited characteristics for analysis. Regarding the agent's testimony about nylon carpet fibers and polyester clothing fibers, Attorney Moore opined that Mr. Filia nullified the expert's testimony by pointing out commonality or popularity of the nylon carpet fibers. (Id., p. 42). She testified, "Mr. Filia I think nullified that by discussing the prevalence of nylon carpeting and the availability of nylon carpeting at the multimillion stores that sell that and the availability of that." (Id., pg. 44).

Attorney Moore addressed the fingerprint evidence in Mrs. Stutzman's case, stating that "The gag was two men's socks – each of the gags were two men's socks rolled and knotted into a very specific knot. Inside the socks was a balled-up knot of duct – of some type of duct tape or strapping tape, and inside the tape was either one or two and I believe it was a thumbprint, fingerprint." (Id., p. 45). Attorney Moore stated that the fingerprint expert testified that a standard fingerprint match to an exemplar is 11 to 14 points, and 21 points were identified with the defendant's prints. (Id.).

Ms. Moore also recalled evidence of a pry-mark or tool-mark found on Mrs. Stutzman's window frames, which were matched by yet other experts to tools found in the defendant's car or home. (Id., p. 46).

Judge Patrick T. Kiniry testified that while in the District Attorney's office in 1996, following the formation of the Violent Crimes Task Force to investigate the rapes of elderly white women in Cambria County, he co-prosecuted the case. Judge Kiniry testified at the PCRA hearing that while none of the victims could identify their attacker, even without Agent Hopkins testimony he definitely would have still prosecuted Mrs. Stuzman's case. This is because he believed that the circumstantial evidence tying the defendant to the four victims was

4

"overwhelming," and that all the evidence applied to Mrs. Stuzman's case.  This evidence included:

- Each of the victim's houses was broken into.
- All four victims were elderly white women.
- Each of the victims had a hood placed over them.
- Each of the victims had their hands tied behind their backs.
- Each of the victims were beaten.
- Each of the victims were raped.
- Each of the women had a gag placed in her mouth, and left there.
- Each gag had a 'distinctive knot' to them.
- Each of the distinctively knotted gags were also wrapped with tape.
- Each of the victims had items taken from their homes such as salt and pepper shakers, Hummels, or cheese or steak knives, and identified their items which were recovered from the defendant's house.
- In Mrs. Stutzman's case, the tape on her gag revealed two latent fingerprints belonging to the defendant.

Assistant District Attorney Scott Lilly, having reviewed the original record, offered in closing argument that Mrs. Stutzman identified two salt cellars, a Vaseline antique glass, trinket boxes from Manila and the Philippines, and a toiletry pack including a TWA (Airline) comb, all found lined up on the defendant's bedroom dresser.

In light of the multitude of evidence presented against the defendant in Mrs. Stuzman's case, we disagree with the defendant's argument that, aside from the illegal expert testimony on hair and fiber evidence, the only thing left upon which the jury could convict in Mrs. Stutzman's – but for the fingerprints – is circumstantial evidence.  Not only may the Commonwealth sustain its burden of proving every element of the crime beyond a reasonable doubt by relying wholly on circumstantial evidence, Com. v. Stasiak, 305 Pa.Super. 257, 451 A.2d 520 (1982). but trial counsel effectively invalidated Agent Hopkins' testimony through objections to overstating his scientific opinion, which were sustained by Judge Swope, and vigorous challenges to the expert's fiber and hair testimony by cross-examination.

Although this Court lacked the opportunity to listen to the testimony and observe the demeanor of the witnesses at trial, we have no doubt based on the PCRA evidentiary record that had Agent Hopkins' testimony been excluded from the defendant's 1996 trial, the outcome of the trial and the jury's verdict of guilt as to the crimes committed upon Mrs. Stutzman would be exactly the same.

Accordingly, the following Order shall issue:

IN THE COURT OF COMMON PLEAS OF CAMBRIA COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA : Nos. 254-1996, 256-1996, 258-1996,
                                : 255-1996, 257-1996
vs.                             :
                                :
JEFFREY HOFFMAN,                : PCRA
              Defendant         :

## OPINION

AND NOW, this 8th day of October, 2015, it is hereby ORDERED that the defendant's request for a new trial is DENIED. The Petition for Post Conviction Relief is hereby DISMISSED.

BY THE COURT:

_____
Timothy P. Creany, P.J.