J-S48045-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA　　:　　IN THE SUPERIOR COURT OF
　　　　　　　　　　　　　　　　　:　　　　　　PENNSYLVANIA
　　　　　　　　　　　　　　　　　:
　　　　　　　　v.　　　　　　　　:
　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　:
KEVIN BURTON　　　　　　　　　　:
　　　　　　　　　　　　　　　　　:
　　　　　　　Appellant　　　　　 :　　No. 106 EDA 2024

Appeal from the PCRA Order Entered November 30, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0406851-2002

BEFORE: STABILE, J., NICHOLS, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:　　　　　　**FILED JANUARY 28, 2025**

Kevin Burton ("Appellant") appeals *pro se* from the order dismissing his fifth petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546. Herein, Appellant maintains that the PCRA court erred in dismissing his petition without conducting a hearing on his claims of newly-discovered evidence. We affirm.

A prior panel of this Court set forth the relevant factual and procedural history of this case which we substantially reproduce here:

> On October 23, 2003, following a jury trial, Appellant and his co-defendant, Carnell Chamberlain, were convicted of first-degree murder, conspiracy, possession of an instrument of crime (PIC) and firearms violations, and sentenced to [an aggregate term of] life imprisonment for the shooting death of Curtis Cannon…. Appellant timely filed a direct appeal complaining that the court erred in denying his motions to suppress, that the verdicts were against the weight and sufficiency of the evidence, that the court erred by admitting a juror over his challenge for cause, that the court erred by refusing to give a [jury instruction pursuant to

*Commonwealth v. Kloiber*, 16 A.2d 820 (Pa. 1954)], and that the court erred by denying his motion for a mistrial. On May 3, 2005, the Superior Court of Pennsylvania … affirmed the judgment of sentence. [*Commonwealth v. Burton*, 880 A.2d 4 (Pa. Super. 2005) (unpublished memorandum).] Appellant's Petition for Allowance of Appeal to the Supreme Court of Pennsylvania was denied on December 21, 2005. [*Commonwealth v. Burton*, 890 A.2d 1056 (Pa. 2005). Accordingly,] Appellant's judgment of sentence became final on March 21, 2006.[1]

On June 14, 2006, Appellant filed a *pro se* petition for PCRA relief claiming that trial [and appellate] counsel w[ere] ineffective for [a variety of reasons, along with a claim of newly-discovered evidence that another individual had shot the victim.] …

[After] an evidentiary hearing[,] … Appellant's petition for PCRA relief was denied. The Superior Court affirmed…, and Appellant's Petition for Allowance of Appeal was denied on December 30, 2009. [*See Commonwealth v. Burton*, 972 A.2d 548 (Pa. Super. 2009) (unpublished memorandum), *appeal denied,* 978 A.2d 158 (Pa. 2009).]

On November 5, 2010, Appellant filed a second PCRA petition claiming that he was entitled to relief based upon exculpatory evidence that had become available, and would have changed the outcome of the trial if it had been introduced. … [O]n July 8, 2011, Appellant's second petition for PCRA relief was formally dismissed. Dismissal was affirmed by the Superior Court on July 12, 2012. [*Commonwealth v. Burton*, 55 A.3d 133 (Pa. Super. 2012) (unpublished memorandum). Appellant did not seek further review with the Pennsylvania Supreme Court.]

On August 3, 2012, Appellant filed a third petition for PCRA relief, again claiming newly[-]discovered evidence. … Following review, on July 17, 2015, Appellant's PCRA petition was formally dismissed without a hearing. On May 3, 2016, the Superior Court affirmed the dismissal. [*Commonwealth v. Burton*, 151 A.3d

---

[1] PCRA petitions must be filed within one year of the date the appellant's judgment of sentence becomes final, including the conclusion of discretionary review by the Supreme Court of the United States, or the expiration of time for seeking this review. 42 Pa.C.S. § 9545(b)(1). A petition for writ of certiorari seeking U.S. Supreme Court review of a state court decision must be filed within 90 days of the entry of the state court's order. U.S. Sup. Ct. R. 13.

1132 (Pa. Super. 2016) (unpublished memorandum).] The petition for allowance of appeal was denied on November 2, 2016. [**Commonwealth v. Burton**, 160 A.3d 781 (Pa. 2016).]

On December 27, 2016, Appellant filed [his fourth PCRA] petition … claiming governmental interference and newly[-]discovered exculpatory evidence that he allegedly received on September 6, 2016. … PCRA counsel was appointed and, on September 8, 2017, counsel filed a letter pursuant to **Turner/Finley**.[2] … On October 20, 2017, Appellant's petition was formally dismissed and PCRA counsel was permitted to withdraw.

**Commonwealth v. Burton**, No. 3801 EDA 2017, unpublished memorandum at *1–5 (Pa. Super. Mar. 12, 2019) (cleaned up; internal footnotes omitted).

This Court affirmed the dismissal of Appellant's fourth PCRA petition, **see generally id.**, and Appellant did not file a petition for allowance of appeal.

Thereafter, on April 11, 2022, Appellant, through counsel, filed the instant PCRA petition, his fifth, asserting newly-discovered evidence. On August 7, 2023, the PCRA court filed a notice pursuant to Pa.R.Crim.P. 907, indicating that it planned to dismiss the petition without a hearing. Appellant's counsel responded to the notice, providing additional affidavits to the PCRA court in support of the timeliness of Appellant's claims of new evidence. After review, the PCRA court concluded that Appellant's PCRA petition was untimely, and no exceptions to the timeliness requirements had been proven. Accordingly, the court denied Appellant's PCRA petition on November 30, 2023. Appellant filed a *pro se* notice of appeal of this determination on

---

2 **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

December 22, 2023.[3] The PCRA court did not order Appellant to file a statement of errors under Pa.R.A.P. 1925.

On appeal, Appellant raises the following claim:

Whether the PCRA [c]ourt committed an error, and/or abused its discretion[,] by dismissing … Appellant's PCRA petition without the benefit of an evidentiary hearing in light of newly[-]discovered facts.

Brief for Appellant at 7.

Our standard and scope of review of an order denying a PCRA petition are well established. Appellate review of a PCRA court's dismissal of a petition is limited to an evaluation of whether "the PCRA court's determination is supported by the record and free of legal error." ***Commonwealth v. Branthafer***, 315 A.3d 113, 123 (Pa. Super. 2024). This Court will not disturb the factual findings of the PCRA court unless there is no support for those findings in the certified record. ***Id***. "In contrast, we review the PCRA court's legal conclusions *de novo*." ***Id***.

Before addressing the merits of Appellant's claim, however, we must evaluate whether his petition was timely filed. Typically, a PCRA petition must be filed within one year of the petitioner's judgment of sentence becoming

---

[3] On January 10, 2024, Appellant's PCRA counsel, Justin Charles Capek, Esq., filed a Motion to Withdraw as Counsel with this Court. On February 13, 2024, this Court granted Attorney Capek's motion and remanded the matter to the PCRA court to determine whether Appellant was eligible for court-appointed counsel. Thereafter, the PCRA court correctly found that Appellant was not entitled to court-appointed counsel for this serial PCRA petition. ***See Commonwealth v. Kubis***, 808 A.2d 196 (Pa. Super. 2002). Appellant is proceeding *pro se* on this appeal.

final. 42 Pa.C.S. § 9545(b)(1). "[A] judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S. § 9545(b)(3). The timeliness of a PCRA petition is jurisdictional; in other words, if a PCRA petition is untimely, the court lacks jurisdiction to consider its merits. **Commonwealth v. Reeves**, 296 A.3d 1228, 1230-31 (Pa. Super. 2023). Without jurisdiction, the court simply does not have the legal authority to address the substantive claims. **Commonwealth v. Spotz**, 171 A.3d 675, 676 (Pa. 2017).

As noted earlier, Appellant's judgment of sentence became final on March 21, 2006, more than seventeen years ago. Appellant's fifth PCRA petition, filed April 11, 2022, is thus untimely on its face. Nonetheless, a petitioner may overcome the PCRA's time-bar if he pleads and proves one of the statutory exceptions set forth in 42 Pa.C.S. § 9545(b)(1). **Id.** These exceptions are: "(1) interference by government officials in the presentation of the claim; (2) newly[-]discovered facts; and (3) an after-recognized constitutional right." **Commonwealth v. Brandon**, 51 A.3d 231, 233-34 (Pa. Super. 2012); **see also** 42 Pa.C.S. § 9545(b)(1)(i-iii). Moreover, a petition invoking an exception to the jurisdictional time-bar must be filed within one year of the date that the claim could have been presented. 42 Pa.C.S. § 9545(b)(2).

To satisfy the newly-discovered-fact exception to the PCRA time bar, a petitioner must demonstrate that he "did not know the facts upon which he

- 5 -

based his petition and could not have learned those facts earlier by the exercise of due diligence." *Commonwealth v. Balestier-Marrero*, 314 A.3d 549, 554 (Pa. Super. 2024). "Due diligence demands that the petitioner take reasonable steps to protect his own interests. A petitioner must explain why he could not have learned of the new fact(s) earlier with the exercise of due diligence." *Commonwealth v. Myers*, 303 A.3d 118, 121-22 (Pa. Super. 2023). Moreover, "[t]his rule is strictly enforced." *Commonwealth v. Brown*, 111 A.3d 171, 176 (Pa. Super. 2015).

Appellant maintains that the two affidavits he has appended to his PCRA petition are sufficient proof of newly-discovered evidence that he was unaware of until obtaining them and that he could not have known about earlier. Appellant first proffers an affidavit from Peter Mobley. Mr. Mobley was a very good friend of the victim in this case, and, according to his affidavit, he saw the victim lying on the ground post-shooting, removed the victim's gloves from his hands, took the victim's gun, and ran away. Brief for Appellant at 13. Critically, Mr. Mobley noted that he only saw his friend *after* he had been shot, when he was lying in the middle of the street; Mr. Mobley had no information about who shot the victim. *Id.*

The second affidavit is from Shakia Smith-Fudge, who states that she was sitting in the street when the victim walked past her very quickly and warned her of upcoming trouble. *Id.* at 13-14. Ms. Smith-Fudge then saw the victim shoot his gun once down the street in the direction he had just left. *Id.* Thereafter, "a bunch of shots" came from the other direction, striking the

victim; Ms. Smith-Fudge immediately ran into a nearby abandoned home. *Id.* at 14. Ms. Smith-Fudge also admits that she also did not see who was shooting at the victim. *Id.*

To evaluate whether the newly-discovered-evidence exception to the timeliness requirement of the PCRA applies in a particular case, we look not to the merits of the actual claim, but rather, whether the petitioner has alleged "facts" which were unknown to him and which could not have been determined by the exercise of "due diligence." *Branthafer*, 315 A.3d at 128 ("The newly-discovered[-]facts exception, however, does not require any merits analysis of the underlying claim, and application of the time-bar exception, therefore, does not necessitate proof of the elements of a claim of after-discovered evidence.") (cleaned up).

Appellant maintains that the new "facts" listed above were unknown to him until he obtained the affidavits in question: Mr. Mobley's affidavit is dated April 21, 2021, and Ms. Smith-Fudge's affidavit is dated June 17, 2021. Appellant filed his counseled PCRA petition on April 7, 2022, within one year of obtaining the affidavits. If Appellant's representations are accepted as true, that he did not know of these witnesses or the testimony they could provide until obtaining the affidavits in question, it is arguable that Appellant has filed his petition within one year of discovering new evidence. Neither witness had testified previously about their knowledge of the incident, nor were they ever a part of the police investigation.

Beyond establishing that he was previously unaware of these facts, however, Appellant must also show that he could not have learned these facts earlier with the exercise of due diligence. "Due diligence does not require perfect vigilance and punctilious care, but merely a showing [that] the party has put forth reasonable effort to obtain the information upon which [the] claim is based." *Commonwealth v. Cox*, 146 A.3d 221, 230 (Pa. 2016).

Here, both claims of newly-discovered evidence concern eyewitness statements of persons who were not previously known to be witnesses to the shooting. Mr. Mobley's affidavit states that he did not initially want to come forward with his information. *See* Statement of Peter Mobley, 4/21/21, attached as Exhibit A to the Brief for Appellant (stating, "I would [have] come forward earlier, but my friend died and I really didn't care who paid for it. Ultimately after sitting in jail myself, I realized if I'm going to better myself this is definitely going to be helpful."). With respect to Ms. Smith-Fudge's affidavit, it states (verbatim) that she

> heard cop sirens and left. I wanted nothing to do with that situation period. I'm coming forward now with this information, Because I speak to gun shot victims in hopes of getting them to tell the truth and put the guns down. And this is something I been holding back for a long time.

Statement of Shakia Smith-Fudge, 6/17/21, attached as Exhibit A to the Brief for Appellant. It appears that neither of these witnesses were previously known to authorities, and they certainly did not testify at Appellant's trial. Thus, the record supports a finding that the signed statements of Mr. Mobley and Ms. Smith-Fudge, and the information contained therein, were unknown

to Appellant and could not have been obtained earlier through due diligence until the witnesses came forward. *See Commonwealth v. Lambert*, 884 A.2d 848, 852 (Pa. 2005) (holding that "so long as the facts set forth in the police file were not otherwise known to appellant, the *Brady* claims he asserts are 'timely' under the newly[-]discovered evidence exception"). *See also Commonwealth v. Dixon*, 296 A.3d 586 (Pa. Super. 2023) (unpublished memorandum) (determining eyewitness testimony from a new witness that someone other than the appellant committed the shooting in question was a newly-discovered fact); *Commonwealth v. Shelley*, 277 A.3d 1135 (Pa. Super. 2022) (unpublished memorandum) (ascertaining that eyewitness statements which were provided to the appellant years after trial satisfied the newly-discovered fact exception to the timeliness provision of the PCRA as they were both unknown to the appellant previously and could not have been obtained earlier with diligence).[4]

The statements involved here are indeed new facts, not newly-willing sources for information about previously known facts. *Branthafer*, *supra*. The affidavits support that Appellant could not have discovered these witnesses earlier as they were not cooperative with authorities and hid their knowledge of the case. As the timeliness evaluation does not consider the merits of the underlying issue as to whether he is entitled to relief, Appellant

---

[4] Non-precedential Superior Court decisions filed after May 1, 2019, may be cited for their persuasive value. Pa.R.A.P. 126(b)(2).

has arguably set forth newly-discovered facts, which could then provide an exception to the PCRA one-year timeliness requirement. However, even if we recognize, contrary to the finding made by the PCRA court, that Appellant's PCRA petition arguably meets a timeliness exception, this does not guarantee Appellant a new trial or any other relief.

Once jurisdiction over a PCRA claim has been properly invoked by establishing an exception to the one-year time bar, "the relevant inquiry becomes whether the claim is cognizable under the PCRA." ***Cox***, ***supra***.

> Section 9543, titled "Eligibility for relief," governs this inquiry. Among other requirements not pertinent to this appeal, section 9543 delineates seven classes of allegations that are eligible for relief under the PCRA. ***See*** 42 Pa.C.S.[] § 9543(a)(2). Of relevance here is the 'after-discovered evidence' provision, which states that a claim alleging 'the unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced' is cognizable under the PCRA. 42 Pa.C.S.[] § 9543(a)(2)(vi).
>
> To establish such a claim, a petitioner must prove that (1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict.

***Cox***, 146 A.3d at 228 (citation and quotation marks omitted; paragraph break added). Importantly, because this four-part test is conjunctive, the failure to establish any one of these prongs is fatal to the claim. ***Commonwealth v. Crumbley***, 270 A.2d 1171, 1178 (Pa. Super. 2022) (citing ***Commonwealth v. Solano***, 129 A.3d 1156, 1180 (Pa. 2015)).

Herein, despite his efforts, Appellant cannot demonstrate that the new evidence provided by these two proposed witnesses would likely compel a different result at trial. In determining whether new evidence would likely result in a different verdict, "a court should consider the integrity of the alleged after-discovered evidence, the motive of those offering the evidence, and the overall strength of the evidence supporting the conviction." *Commonwealth v. Crumbley*, 270 A.3d 1171, 1179 (Pa. Super. 2022).

*Crumbley* provides an example of a case where newly-discovered evidence did not result in the grant of a new trial. Crumbly was convicted of first-degree murder and related offenses. *Id.* at 1175. At trial, the Commonwealth's identification evidence primarily consisted of an eyewitness named Robinson, who testified that she saw Crumbley and his co-defendant shoot the victim. *Id.* During the litigation of his PCRA petition, Crumbley offered an affidavit from a new eyewitness, jitney driver Robert Raglin, who claimed that he had dropped two men off in the vicinity of the incident, that he saw these two men shooting at a white car, and that neither of these two men was Crumbley or his co-defendant. *Id.* at 1176-77. At the evidentiary hearing on Crumbley's PCRA petition, Raglan testified that once he realized that he had information about this shooting, he wrote to Crumbley because he did not want an innocent man to be stuck in jail. *Id.* However, Raglan further testified at the PCRA hearing that he did not see anyone get struck by a bullet, he did not see anyone laying on the ground, and he did not even see what the victim looked like. *Id.* He further was unable to identify anyone

- 11 -

inside the white car because he "wasn't paying attention" and "everything happened in a tenth of a second." *Id.*

The PCRA court found that Raglan lacked credibility "based on his demeanor and the lack of detail in his account." *Id.* at 1179. It also expressed skepticism about the circumstances by which Raglan decided to come forward. *Id.* at 1180. On appeal, this Court found no abuse of discretion in the denial of PCRA relief. *Id.* Specifically, we noted that

> [t]he record supports the PCRA court's finding that Raglin's account would have had minimal value as compared to the evidence of Crumbley's guilt. [The eyewitness] Robinson was found credible, and there are too many holes in Raglin's bizarre story for it to likely result in a different outcome were a new trial granted.

*Id.*

*Crumbley* can be contrasted with *Commonwealth v. Valderrama*, 388 A.2d 1042 (Pa. 1978), another case involving a conviction for murder in the first degree. At his trial, Valderrama had claimed an alibi, that he was working in Puerto Rico at the time of the crime. *Id.* at 1044. He provided several witnesses in support of the alibi, including the director of public works for the city of Ciales, who was Valderrama's direct supervisor. *Id.* Other witnesses included the mayor of Ciales and the municipal treasurer. *Id.* In rebuttal, the Commonwealth presented testimony from an employee of the Social Security Administration who testified that no records existed to confirm Valderrama's employment. *Id.* Valderrama was convicted as charged.

On appeal, Valderrama asserted newly-obtained evidence about his employment records from Puerto Rico. Specifically, he had discovered that his wages had initially been reported without a Social Security number; this error had been rectified since his trial and his records had been updated. *Id.* at 1044-45. Valderrama asserted that with this new proof of his alibi, he had provided newly-discovered evidence which would have caused a different verdict to be reached at his trial. *Id.* Our Supreme Court agreed.

First, the evidence could not have been obtained prior to trial because the Commonwealth's rebuttal evidence had been wholly unexpected, as Valderrama had no reason to suspect that his employment records were not accurate. *Id.* at 1045. The evidence was not merely cumulative or corroborative, as it negated the evidence presented by the Commonwealth about the missing social security number. *Id.* The evidence was not intended only to impeach the credibility of a witness; rather, the new evidence explained the incomplete nature of the Commonwealth's records. *Id.* Finally, with respect to whether the evidence would have compelled a different verdict, the Court offered:

> At trial, the Commonwealth claimed that [Valderrama] never worked for the municipality in Puerto Rico. The incomplete social security records supported this assertion and cast doubt on [Valderrama's] alibi defense. Given the completed social security records, [Valderrama's] alibi would receive substantial support and a different verdict would likely result.

*Id.* Accordingly, Valderrama was awarded a new trial.

Appellant primarily argues in his brief that his PCRA petition should be deemed timely filed, and little else. The following is a verbatim recitation of Appellant's entire argument on the merits of his claim:

> The facts are clear in this case theirs no possible way that the appellant could have known that Mr. Peter Mobley removed a firearm from the victim and took gloves off the victims hand to eliminate the existence of gun shot residue on the hands of the victim, whom by eye witness account of the second individual Ms. Sha'kia Smith-Fidge, seen the victim show a firearm First and then was shot and killed trying to flee. The appellant could have not known that Ms. Sha'kia Smith-Fudge witnessed the victim death. *Yes, it is true that neither witness stated they seen the shooter, but what is also true is the fact that they did not say the appellant was the shooter.* …
>
> To after-discovered facts in this case is exculpatory, and would likely affect the outcome of the trial, if both Mr. Mobley, and Ms. Smith-Fudge were to testify to the fact stated within their affidavits at New trial, the PCRA Court should have an evidentiary hearing. It would be difficult for the Commonwealth to prove the premeditation and lack of provocation which a conviction for first-degree murder would require.

Brief for Appellant at 16, 18 (emphasis added).

Appellant acknowledges in his argument why the testimony put forth in the two affidavits would not result in a different outcome of his trial — neither witness saw who shot the victim — as they provide no evidence to suggest that Appellant was not the shooter. One witness, Mr. Mobley, saw the victim after he was shot and removed the victim's gun and gloves from the scene. But with no testimony to contradict the trial testimony about who shot the victim, this evidence is meaningless. This new evidence simply does not establish any reason to doubt Appellant's conviction.

The same result applies to Ms. Smith-Fudge's proposed testimony. Ms. Smith-Fudge states that she saw the victim walking quickly down the street, that he warned her of trouble, and that the victim fired his weapon one time in the direction from which he had come. Then, according to the affidavit, Ms. Smith-Fudge heard a barrage of gunfire from the other direction, which caused her to retreat inside the building. Again, Ms. Smith-Fudge had no information about who shot the victim. It is difficult to imagine how this proposed evidence provides any doubt at all, let alone a reasonable one, as to Appellant's guilty verdict.

While never clearly stated in his PCRA petition or his brief to this Court, we recognize that Appellant may be attempting to show that the proffered testimony from these two witnesses would support a finding that he acted in self-defense. First, this claim is wholly undeveloped, which would require a finding of waiver. *Commonwealth v. Armolt*, 294 A.3d 364, 379 (Pa. 2023) (finding waiver for a claim where the appellant failed to explain how the trial court committed an *ex post facto* violation). Moreover, the affidavit here of Ms. Smith-Fudge establishes that the victim was fleeing when he was shot and killed. Thus, any assertion of self-defense would be unsuccessful. *See, e.g.*, *Commonwealth v. Miller*, 172 A.3d 632, 640 (Pa. Super. 2017) (stating the elements of self-defense are that (1) the individual reasonably believed that force was necessary to protect himself from death or serious bodily injury, (2) the individual was free from fault in provoking the use of force against him, and (3) he did not violate any duty to retreat).

Accordingly, we conclude that Appellant has not provided newly-discovered evidence that would have changed the verdict in his case. Appellant simply cannot show that the evidence proffered by these two affidavits would compel a different result. Neither of these two new "witnesses" actually witnessed who was responsible for shooting the victim in this case; thus, their proposed testimony would have minimal value as compared to the evidence of Appellant's guilt. We therefore affirm the PCRA court's order denying Appellant's fifth PCRA petition.[5]

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/28/2025

---

[5] We recognize that that the PCRA court had found Appellant's petition to be untimely. However, we may affirm the denial of PCRA relief if it is correct on any basis. **Commonwealth v. Williams**, 324 A.3d 569, 576 n.3 (Pa. Super. 2024).